UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESLEY S. SPEARS | : | CIVIL NO. 3:02CV661(RNC) |
| | : | |
| VS. | : | |
| | : | |
| MARCUS CAMBY | : | APRIL 28, 2005 |

**PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   STATEMENT OF THE CASE**

This is an action for breach of contract arising out of a verbal agreement between the Plaintiff, Wesley S. Spears, and the Defendant, Marcus Camby.  The Defendant is an individual who currently plays professional basketball in the National Basketball Association ("NBA").  Mr. Spears is an attorney who, at all relevant times, was admitted to practice law in the State of Connecticut.

The defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On or about December 22, 1995, the defendant verbally agreed to have Mr. Spears assemble a group of individuals, including Mr. Spears, to represent the defendant's personal, legal, business and financial needs, and to provide the defendant and his family with financial support prior to the defendant's anticipated eventual entry into the NBA.  Complaint, ¶ 10.  In consideration for Mr. Spears' representation on his behalf, the defendant agreed to compensate him with 4% of any future NBA salaries and 20% of all revenues the defendant may have received from endorsement deals, as well as reimbursement therefrom, of all expenses incurred by Mr. Spears relating to his representation of the defendant.  Id.

After entering into this verbal contract with the defendant, Mr. Spears suspended a large portion of his law practice and expended substantial time, effort, and sums of money to provide the defendant, his family, and his friends with financial and related support.  Exhibit A, Affidavit of Wesley Spears, Esq., ¶ 4.  Mr. Spears completely performed his part of the bargain.  Id.

The plaintiff became aware of the defendant's subsequent breach of this verbal agreement in May, 1996.  The defendant admitted his friends and he had been deliberately scamming Mr. Spears for cash payments, as well as legal, financial, and personal representation, see M. Camby Statement, Exhibit B; see also Deposition of M. Camby, Exhibit C, at 94-96.

After discovery that the defendant had no intention of ever performing his part of the deal, Mr. Spears filed this lawsuit against the defendant, by Complaint dated January 7, 2002.  The defendant now moves for summary judgment, arguing, essentially, that the contract between Mr. Spears and the defendant is unconscionable and unenforceable on grounds of public policy.  The plaintiff will refute these arguments in turn.

**II. LAW & ARGUMENT**

**A. Standard for a Rule 56 Motion for Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue of fact is genuine "if the evidence is such that

2

a jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002). A fact is material when it "might affect the outcome of the suit under the governing law." Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003).

"A party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists." Security Ins. Co. v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," Golden Pac Bancorp v. FDIC, 375 F.3d 196, 200-01 (2d Cir. 2004), and it "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the opposing party must produce admissible evidence that supports its pleadings.

"In determining whether a genuine issue of material fact exists, the court will construe the evidence in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in that party's favor." Jacques v. DiMarzio, 386 F.3d 192, 205 (2d Cir. 2004). "Accordingly, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Summary judgment is therefore inappropriate if there is any evidence in the record that could reasonably support a jury's verdict for the [opposing] party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).

**B.    The Motion Cannot be Heard Because the Defendant has Not Complied With Local Rules of Civil Procedure, Rule 56(a)1.**

Pursuant to Local Rule 56(a)1, in order to simplify issues of fact and clarify them for the Court's use, the party moving for summary judgment is required to submit a detailed statement of undisputed facts, as a precondition to the opposing party's submission of a corresponding statement admitting or denying each proffered undisputed fact, pursuant to Local Rule 56(a)2.

Since the Defendant has not provided the Court or the Plaintiff with this required section of his brief, the disputed material factual issues have not been sufficiently clarified for the Court's use.  Consequently, the Court cannot and should not proceed to hear the Defendant's motion and should deny it summarily.

**C.    The Motion must be Denied because the Defendant Attempts to Vary the Law of the Case by Re-Arguing Issues Previously Ruled Upon.**

Regardless of Section B, above, the defendant cannot argue those issues that have already been ruled upon by this Court in prior proceedings.  As such, the "law of the case" doctrine precludes argument on issues concerning the asserted illegality of the contract because this issue has previously been briefed and argued in defendant's Rule 12(b)(6) Motion to Dismiss, dated September 3, 2002, opposed by brief and then fully argued orally to the Court thereafter, and decided upon by the Court, by decision dated May 8, 2003.

"The law of the case doctrine provides that a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  Casey v.

United States, 161 F. Supp. 2d 86, 91 (D. Conn. 2001), quoting North River Ins. Co. v. Philadelphia Reinsurance Corp., 63 F.3d 160, 164 (2d Cir. 195), cert. denied 516 U.S. 1184 (1996) (citing, Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 258 U.S. App. D.C. 124, 810 F.2d 243, 250 (D.C. Cir. 1987). This doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." Id., quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). "[A] court should be loath to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Id., quoting North River, 63 F.3d at 165 (quoting Christianson, 486 U.S. at 817).

"The doctrine seeks to ensure fair treatment of the parties and to promote judicial efficiency and finality of the proceedings by avoiding duplicative decisionmaking." Id., quoting Natural Resources Defense Council, Inc. v. Fox, 30 F. Supp. 2d 369, 374 (S.D.N.Y. 1998). "A court may reconsider a prior ruling under three situations: 1) an intervening change in the controlling law; 2) the availability of new evidence; and 3) the need to correct a clear error of law or to prevent manifest injustice." Id., see also DiLaura v. Power Auth. Of State of New York, 982 F.2d 73, 76 (2d Cir. 1992); Washington Nat'l Life Ins. Co. of New York v. Morgan Stanley & Co., Inc., 974 F. Supp. 214, 218-19 (S.D.N.Y. 1997).

In the case at bar, there have been no changes in the controlling law, no new evidence has been adduced, and no clear error has been argued. Despite this, the defendant now urges in its Memorandum of Law that "the contract which is the subject of the present plaintiff's claim is illegal, against public policy, unfair and deception, and

5

is therefore unenforceable." <u>Memorandum of Law in Support of Defendant's Motion for Summary Judgment,</u> at 4.

Tellingly, this very same argument appears in Defendant's Motion to Dismiss, filed September 3, 2002.  On page 6 of his brief, the defendant argues that "the contract which is the subject of the plaintiff's complaint is illegal, against public policy, unfair and deceptive.  Accordingly, the alleged contract between Camby and Spears is unenforceable." <u>Defendant's Motion to Dismiss</u>, at 6.  Indeed, the defendant's claims have not changed in any meaningful way since the original 2002 filing and the defendant now fails to cite any clear errors or new evidence that might justify a reconsideration.

As such, because this Court declined to dismiss plaintiff's suit upon hearing defendant's previous, almost identical, Motion to Dismiss, and oral argument thereon, and the defendant sat on his hands thereafter, by failing to ever file a Motion to Reconsider, let alone an appeal of the adverse ruling, the defendant is now precluded from arguing those issues that have already been decided upon by this Court.  Since the defendant makes no present claim of a subsequent material change of circumstance or substantial injustice, the "law of the case" doctrine now precludes the defendant, tactically, from getting a "second bite at the apple."

Insofar as the court is somehow induced to revisit already decided issues relating to the alleged illegality of the contract, the plaintiff stands by his brief on such issues, dated December 27, 2002, and already on file with this Court.

### D.  The Oral Agreement Is Not Unconscionable as a Matter of Law

The oral agreement entered into between the defendant and Mr. Spears for professional services is not unconscionable.  As such, the agreement that the defendant voluntarily entered into with Mr. Spears is enforceable as a matter of law.

"The question of unconscionability is a matter of law to be decided by the Court based on all the facts and circumstances of the case."  Monetary Funding Group, Inc. v. Pluchino, 87 Conn. App. 401, 411 (2005), quoting Family Financial Services, Inc. v. Spencer, 41 Conn. App. 754, 762-63 (1996).  "Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances."  Id.  The law leans strongly toward allowing parties to freely enter into agreements of their own choice, absent extreme duress.  Therefore, as the defendant notes it his own brief, "[t]he classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make on the one hand, and which no fair and honest man would accept on the other."  Smith v. Mitsubishi Motors Corp. of America, 247 Conn. 342, 249 (1998) (citations omitted).  "In practice, [courts] have come to divide this definition into two aspects of unconscionability, one procedural and other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression."  Id.  The defendant's argument, especially when viewed in the light most favorable to the plaintiff, fails to come close to satisfying these broad parameters within which mutual assent is recognized.

To begin with, the business contract between the defendant and Mr. Spears is procedurally valid.  It was the defendant who knew exactly what he was doing in "scamming" Mr. Spears in connection with his personal, financial and legal needs.  M.

7

Camby Statement, Exhibit A; supra; Deposition of M. Camby, Exhibit C, supra at 94-96. For approximately six months, from December, 1995 until May, 1996, the defendant induced Mr. Spears to believe he would represent Mr. Camby, once he signed on with the NBA.  Id.; Affidavit of Wesley Spears, Esq.; ¶¶ 1 and 5.

In a sworn statement signed by the defendant on June 24, 1996, the defendant admitted that his friends and he told Mr. Spears "we needed two stereos that we had seen at [an electronic store].  I knew we were just scamming Spears at the time cause I had already signed with [an agent], but we decided to take him for one last time."  M. Camby Statement, Exhibit B; supra; see also Deposition of M. Camby, Exhibit C, supra at 94-96.  Indeed, Mr. Spears partially suspended his solo law practice, assembled a team of professions to represent Mr. Camby and spent approximately $75,000 on the defendant, his friends, and his family members in a period of six months, while the defendant and his friends were deliberately "scamming" him for cash, as well as for legal, financial and personal representation.  Id., see Affidavit of Wesley Spears, Esq., ¶ 4.

Additionally, the defendant had years of experience in the industry, dealing with, scamming and accepting gifts from player agents like John Lounsbury.  See Deposition of M. Camby, Exhibit C, at 107-09, 135.  In fact, the defendant eventually repaid Mr. Lounsbury $28,000 for the scam he admittedly perpetrated on him.  Id. at 152-53.

Mr. Spears, on the other hand, was a novice whose only dealings with basketball players and professional athletes was during this six month period when he became involved with Mr. Camby, at Mr. Camby's request.  See Affidavit of Wesley Spears, Esq., supra, ¶¶ 1 and 8.  It makes no difference that the two were of different ages or

8

educational backgrounds – the defendant knew the business of basketball much better than Mr. Spears did at the time the agreement was made. If any party was unfairly surprised or compromised, it is Mr. Spears, in connection with the considerable time, efforts and monies he expended in reliance on the defendant's admitted, planned misrepresentations to him.

The business contract is also substantively valid. As demonstrated above, it was the defendant in this case who possessed the unequal bargaining power in relation to Mr. Spears by virtue of his vast experience in the industry and his prior dealings with prospective player agents.

In substantive terms, however, the agreement was based on a number of contingencies that could have worked to either party's favor. At the time the contract was entered into in December 1995, the defendant agreed that Mr. Spears would represent him and be entitled to 4% of his NBA salary and 20% of his endorsements *only if* he became an NBA player. In return, Mr. Spears promised his continued financial, legal and personal support until the defendant decided to declare for the NBA draft. As admitted by the defendant, he did not decide to declare for the draft until several months after his agreement with Mr. Spears was made, meaning that if the defendant had chosen not to enter the draft in 1996, Mr. Spears would have had to have continued to support him pursuant to the terms of the parties' agreement for another full year, to fulfill the agreement. Deposition of M. Camby, Exhibit C, at 105-107. Mr. Spears was only entitled to a percentage of the money from defendant's salary and endorsement deals *if* and when the defendant earned an NBA salary and related endorsements.

Furthermore, had the defendant been injured while a player with the University of Massachusetts or once he joined the NBA, or had the defendant decided to stop playing at any point in time, Mr. Spears anticipated financial recovery would have either been totally unsatisfied or otherwise negatively impacted, depending on the precise situation.

"The basic test for [unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." LaSalle National Bank v. Freshfield Meadows, LLC, 69 Conn. App. 824, 837 (2002). Thus, the adequacy of consideration is not the legal touchstone. Id. Applying this rule of law to the instant case, viewed, of course, in the light most favorable to the plaintiff, the defendant's claim regarding unconscionability is unsustainable.

The conditions that existed at the time Mr. Spears and the defendant made the contract fully justify its terms – each party understood the inherent risks and benefits by virtue of their respective backgrounds and interests and each party, therefore, voluntarily participated in the contract's terms. At the time the contract was made, the terms were far from one-sided – the defendant received professional, financial and personal guidance while Mr. Spears, at a great personal cost and risk, received a stake in the defendant's future career *should* his career eventually flourish, well before either knew Mr. Camby's ultimate professional fate.

When assessed in these real terms, it is clear that the contract was not legally unconscionable, either factually, or when measured by the applicable legal standard.

### E. The Business Contract Does Not Violate Connecticut's Usury Laws

The contract entered into between Mr. Spears and the defendant does not violate the State's usury laws. The oral agreement between the two parties was not a loan, and did not provide, directly or indirectly, for the accrual of interest or repayment absent fulfillment of a related, extraneous agreement. As such, the usury laws do not apply to the instant case.

Section 37-4 of the Connecticut General Statutes provides that "[n]o person…shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum." In its brief, the defendant correctly acknowledges that Mr. Spears has never characterized the subject business contract as a loan. Mr. Spears did expend substantial sums of money on behalf of the defendant and his friends, but the return he seeks is not usurious – rather, Mr. Spears, upon full performance of his part of the agreement, simply claims the monies he is entitled to pursuant to the terms of the agreement. He has never charged nor demanded interest from the defendant. Mr. Spears is merely pursuing the actual monies owed to him pursuant to the terms of the parties' contract, which was a business contract payable upon performance of services, certainly not a loan, in name, format or execution – he never loaned the defendant anything. Additionally, of course, he never directly or indirectly charged any interest, either. As such, the usury statute simply does not apply to this case.

### III. CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the court deny the defendant's motion for summary judgment.

                THE PLAINTIFF,
                WESLEY SPEARS


By:_____
    David K. Jaffe, Esq. (Fed. Bar #ct04640)
    Brown Paindiris & Scott, LLP
    100 Pearl Street
    Hartford, CT 06103
    Tel: (860) 522-3343
    Fax: (860) 522-2490

### CERTIFICATION

I certify that a copy of the foregoing has been mailed, postage prepaid, on April 28, 2005, to the following:

Patrick M. Noonan
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437

A. Paul Spinella
Spinella & Associates
One Lewis Street
Hartford, CT 06103


_____
David K. Jaffe