## AFFIDAVIT OF WESLEY SPEARS, ESQ.

I, Wesley Spears, being of sound mind and over the age of eighteen (18), do hereby swear and say:

1. Around Christmas time, 1995, at my home in West Hartford, I gave Marcus Camby, a junior at the University of Massachusetts, a gold chain and pendant in a box, which he had requested, which he opened, and accepted, as well as $5,000, around that time as well.

2. He agreed at that time I would represent him and be entitled to 4% of his salary and 20% of his endorsements if he became an NBA player, in exchange for my continued support of him until he declared for the NBA draft, which would occur, probably, either in May, 1996 or May, 1997.

3. At the time, I knew that he had already been paid by John Lounsbury, in an attempt to become his agent and therefore he was "ineligible" under NCAA rules.

4. Pursuant to our agreement, I fully performed my end of the bargain as follows:

    a) I spent approximately $75,000 on Mr. Camby and his friends and mother from December, 1995 through May, 1996 on items including cars, airline tickets, jewelry, clothing, basketball tickets, hotel rooms, and shopping sprees.

    b) I downsized my criminal and personal injury solo law practice to less than half its prior size to support and assist Mr. Camby, as promised, to my great additional financial detriment.

    c) I attended, also at my own cost, most of his 1995 – 1996 home and away regular season and playoff college basketball games and often paid the way for friends and relatives, including his mother.

d) I assembled a team of professionals and friends including myself; Joseph Suggs, former Treasurer of the State of Connecticut; Al Tindal, Manhatton attorney; George Bappas, Vice President of Merrill Lynch; Boris Wray and Tamia Murray, Marcus' close friends, to advise and promote Mr. Camby and I showed him the promotional videotape which I assembled featuring this team, in New York, around April, 1996.

5. All moneys and items received by Mr. Camby and his friends and relatives were given to them by me as part of Mr. Camby's agreement with me. None were loans. I never requested or expected interest or repayment at that time.

6. If I had billed Mr. Camby for all of my time, as described, at a reduced hourly rate of $200 per hour, I estimate that the bill would have exceeded $150,000 for this time period.

7. Outside of the above described agreement and relationship with Mr. Camby, my entire professional activities were as a private attorney in Connecticut.

8. As such, I have never had dealings of any kind with any other athlete in an attempt to represent them or become their agent, and I have never, therefore, provided any other athlete, or associates thereof, with money, gifts or remunerations or benefits of any kind.

I have read the above, and believe the same to be true and accurate.

_____
Wesley Spears

On this 27th day of April, 2005, personally appeared Wesley Spears, who attested to the truth of the above.

_____
Commissioner of the Superior Court