UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESLEY S. SPEARS | : | CIVIL NO. 3:02CV661 (RNC) |
| VS. | : | |
| MARCUS CAMBY | : | May 18, 2005 |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Marcus Camby submits this Reply Brief in Support of his Motion for Summary Judgment and in response to plaintiff's Brief in Opposition to the Motion for Summary Judgment, dated April 28, 2005.

**I.   The Failure To File A Rule 56(a)(1) Statement Has Now Been Rectified.**

Plaintiff correctly points out that defense counsel mistakenly failed to include a Rule 56(a)(1) statement of undisputed facts when filing the Motion for Summary Judgment. Defense counsel has now rectified this error by filing such a statement, contemporaneously with the present brief. Inasmuch as the Federal Rules are to be interpreted in order to promote the "just, speedy and inexpensive determination of every action," the Court should not permit the plaintiff to seize upon the inadvertent mistake of defense counsel to deny the present motion. Fed. R. Civ. P. 1. Accordingly, the Motion for Summary Judgment should be heard on its merits.

**II.   The Alleged Contract Is Unenforceable Because It Is Illegal And Contrary To Public Policy.**

The alleged contract between the plaintiff and Mr. Camby is not enforceable because it is illegal and against public policy. The plaintiff argues that the Court has already addressed the

illegality of the contract in the defendant's Motion to Dismiss, and therefore the doctrine of "law of the case" precludes the defendant from raising the issue in a motion for summary judgment. The plaintiff's position is legally incorrect.

The defendant moved to dismiss the plaintiff's Complaint on September 2, 2002. On December 27, 2002, the plaintiff opposed the defendant's Motion to Dismiss and argued that the court should rule upon the motion without looking beyond the complaint. Below is a quote, at length, from the plaintiff's opposition brief:

> The defendant's argument references a number of extrinsic "facts" not alleged in the Complaint, nor within the parameters of the Complaint. First, the Complaint does not allege that the defendant was attending college. Second, it does not allege that the defendant was attending college in Massachusetts. Third, the Complaint makes no allegation that the underlying services contract was for professional services associated with the National Basketball Association ("NBA"), or the National Basketball Player's Association ("NBPA"). Fourth, there is no allegation in the Complaint, contrary to what is asserted by the defendant in support of his motion, that Mr. Spears applied to the NBPA for certification a month after the underlying contract was consummated, or at any time. Fifth, there is no allegation in the Complaint that Mr. Spears was prosecuted or took accelerated rehabilitation, as also referenced by the defendant. Sixth, there is no allegation relating to a John Lounsbury being found in violation of NCAA rules. Consequently, none of the aforementioned "facts" upon which the defendant relies in his memorandum to attempt to demonstrate the unenforceability of the parties' contract should be considered pursuant to his Rule 12(b)(6) motion for failure to state a claim. *Plaintiff's Motion is Opposition to Defendant's Motion to Dismiss,* December 27, 2002.

To put it another way, the review undertaken on a Motion to Dismiss is quite distinct from that which is undertaken on a Motion for Summary Judgment. As the plaintiff noted, the Motion to Dismiss was limited to the allegations of the complaint. The present Motion for Summary Judgment is not so limited; the Court can now examine the factual record. The Plaintiff seeks to

2

limit the court's summary judgment evaluation of this alleged contract to the plaintiff's Complaint. There is no precedent for such a scheme.  The "law of the case" doctrine does not apply to subsequent proceedings in the same case where the standard of review is different. McCutcheon and Burr, Inc. v. Berman, 218 Conn. 512, 525 (1991).  There the Connecticut Supreme Court found that a determination during a prejudgment attachment was not "the law of the case" for a later motion to dismiss since the ruling for the prejudgment remedy employed a different legal standard. Id. at 524-25.  The Court noted, "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked."  Id. (citations omitted).

While a motion to dismiss tests the legal sufficiency of a claim and is limited to the four-corners of the complaint, a motion for summary judgment seeks to determine, based on supporting evidence, whether a genuine issue of material fact exists.  Since a more complete record is now available to this Court, the "law of the case" doctrine does not apply.  Casey v. U.S., 161 F.Supp.2d 86, 92 (D.Conn. 2001) ("A court may revisit the law of the case where new evidence has surfaced or a more complete record has developed") (citations omitted).  The Court in Casey found that it was appropriate to revisit a previous ruling where the judge's decision rested on an incomplete record.   Likewise, the "law of the case" doctrine did not preclude the defense's motion to dismiss an amended complaint, where the court had previously ruled that the complaint was adequate and that it did not violate Rule 11.  Plummer v Gordon, 193 F.Supp.2d 460 (D.Conn. 2002). *See also,* Doe v. Cigna Life Insurance Co. of New York, 304 F.Supp.2d 477 (W.D.N.Y. 2004) (law of case doctrine did not preclude arguments from being raised on summary judgment

where judge rejected same arguments in response to opposition to motion to amend complaint, since decision was not a judicial determination on the merits.).

Since a motion for summary judgment takes into account additional evidence not properly considered on a motion to dismiss, the "law of the case" doctrine does not prevent the court from reviewing the same issues on a Motion for Summary Judgment even though those issues had been addressed on a Motion to Dismiss. *See e.g.,* Weigold v. Patel, 2002 WL 1837916 F1 Conn. Super. (July 9, 2002) (Sferrazza, J.) (Where the plaintiff argued that an issue had already been decided on a motion to strike, the court said, "As the standard for a motion to strike, in which the court takes the facts pled as true and determines the legal sufficiency of the complaint, differs from that on a motion for summary judgment, the denial of the motion to strike does not constitute the law of the case."); Watson v. Russo, 2003 WL 22079559 *3-4 Conn. Super. (July 25, 2003) (Shapiro, J.) (Since "on the motion to strike, the court did not consider evidence", there was new evidence before the court for the motion for summary judgment, and the prior determination for the purposes of the motion to strike was not the law of the case.); Galligan v. Edward D. Jones & Co., 2000 WL 1785041 Conn. Super. (Nov. 13, 2000) (Levin, J.) (When party moved for summary judgment, "law of the case" doctrine did not apply from court's previous denial of motion to strike); Riddick v. City of New York, 4 A.D.3d 242, 245 (2004) ("We find the plaintiff's reliance on the law of the case doctrine misplaced. That doctrine is inapplicable where, as here, a summary judgment motion follows a motion to dismiss as the scope of review is distinct.") (citations omitted); Classic Limousine v. Alliance Limousine, LLC, 2002 WL 31050919 *2 Conn.Super. (Aug. 13, 2002) (D'andrea, J.) (Denial of injunction was not "the law of the case" for a motion for summary

judgment since the standards were different and "if… factual findings entered in a preliminary phase of the case became the law of the case, from which a subsequent court could not depart, then virtually no litigant who failed to prevail in a hearing on a discrete claim for relief…could ever expect to prevail at trial.") Id. at 3.   Similarly, the present plaintiff's argument that rulings on a motion to dismiss should preclude consideration of an issue on a motion for summary judgment, if true, would obviate the need for summary judgment motions altogether.

Even if the doctrine of "the law of the case" were applicable, this court would not be bound by its earlier ruling.  "It is well established that the interlocutory orders and rulings made pretrial by a district judge are subject to modification by the district judge at any time prior to final judgment" Remington Products, Inc. v. North American Philips, 755 F.Supp. 52, 54 (D.Conn. 1991) *citing* In re United States, 733 F.2d 10, 13 (2d Cir. 1984); *see also,* United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982)  (The doctrine is discretionary and does not constitute a limitation on the court's power); Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001); Royal Insurance Co. of America v. Zygo Corp., 349 F.Supp.2d 295, 304 (D.Conn. 2004) (The law of the case doctrine is a discretionary rule that "does not limit a court's power to reconsider its own decisions prior to final judgment.") *citing* Virgin Atl. Airways Ltd. v. Nat'l. Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

It is proper and necessary for this Court to re-examine the illegality of the plaintiff's alleged contract. Conn. Gen. Stat. §20-555(4) states that, "An athlete agent shall not enter into an oral or written agent contract or professional services contract with an athlete before the athlete's eligibility for collegiate athletics expires."  The statute demonstrates that the legislature of

5

Connecticut[1] has determined that this sort of agreement is illegal and contrary to public policy. When this Court considered the defendant's Motion to Dismiss, it was bound by the plaintiff's Complaint, which omitted crucial facts about the nature of the alleged agreement.

It is now clear that the plaintiff seeks to enforce an illegal athletic agent contract. It is undisputed that the defendant was a basketball player at the University of Massachusetts when he met the plaintiff. The plaintiff stated in his deposition that he had an agreement where he would provide Mr. Camby with money, Camby would have the option of choosing the plaintiff as agent, and in any event, Camby would compensate the plaintiff as if he were Camby's agent. See, Exhibit A to defendant's original brief, deposition of Wesley Spears pp. 28, 66-67. Spears knew at the time that Camby was a college athlete and that giving things of value to a college athlete was prohibited. See, Exhibit A, deposition of Wesley Spears, pp.45-47. Where the clear aim of a contract is to violate the law, that contract is unenforceable. Solomon v. Gilmore, 248 Conn. 769, 785 (1999); Barrett Builders v. Miller, 215 Conn. 316, 324 (1990); Parente v. Pirozzoli, 87 Conn. App. 235 (2005) *see also,* Barry v. Pacific West Construction, Inc., 140 Idaho 827, 103 P. 3d. 440 (2004) (Contract was illegal and unenforceable where contractor did not hold public

works license); Vine Street Clinic v. Healthlink, Inc., 353 Ill. App. 3d 929, 819 N.E.2d 363, 370 (2004) (Contract not enforceable where physicians sought recovery of fees paid into an illegal fee splitting arrangement).

---

[1] At least 27 other states have similar provisions.

The public policy of the above statute would be violated whether or not the statute applies to the plaintiff.[2] McIntosh v. Mills, 121 Cal.App.4th 333, 346 (2004) (Fee splitting agreement with non-lawyer made agreement unenforceable, and it did not matter that the ethical rules were not applicable to non-lawyers because "the doctrine of illegality considers whether the *object* of the contract is illegal. It does not turn on whether the illegality applies to the *party* seeking to enforce the agreement.") (emphasis in original); Heyde Companies, Inc. v. Dove Healthcare, LLC, 258 Wis.2d 28, 654 N.W.2d 830 (2002) (Statute prohibiting unreasonable restraint of trade was not facially applicable to no-hire provisions, but the contractual provision clearly violated the public policy of the state as expressed in the law). The relevant consideration is that the public policy of Connecticut prohibits agent-athlete agreements made while the athlete is a collegiate player. Accordingly, the present contract is contrary to public policy, and it may not be enforced.

**III.   The Alleged Contract Is Unenforceable Because It Is Unconscionable.**

The plaintiff brazenly accuses Mr. Camby of "scamming", and ignores the fact that it is the plaintiff who is seeking four million dollars that he has not earned. The plaintiff has not put forth any credible evidence that he performed any service for Mr. Camby. He certainly has not performed services to justify the exorbitant amount of money he seeks in this lawsuit. The plaintiff is an experienced lawyer and he knew when he entered this alleged agreement, which is not

---

[2] As plaintiff has noted, at the time plaintiff entered into the alleged contract, the Connecticut statute prohibited agents from giving items of value to Connecticut athletes. The statute was later amended to include all collegiate athletes, irrespective of their state of residence.

supported by any documentation, witnesses, signatures, journal entries, or any other evidence, that Mr. Camby was destitute.  Mr. Camby was not represented by counsel and had no experience making multi-million-dollar agreements.  How a college student can "have years of experience in the industry" as claimed in plaintiff's brief, is beyond comprehension.  The fact is, there was a great disparity in experience, knowledge and influence between the plaintiff and Mr. Camby when this alleged agreement was reached.   The plaintiff argues that "the defendant knew the business of basketball much better than Mr. Spears did."  If that is true, then what qualifies the plaintiff to millions of dollars for agent fees?

The alleged agreement is also substantively invalid because it is so one-sided as to shock the conscience.  The plaintiff knew that Mr. Camby was about to embark upon a lucrative professional basketball career, and so he allegedly offered a bargain in which he would provide Camby with a modest sum of money and the plaintiff would then be entitled to a percentage of Camby's earnings for the duration of Camby's career!  At this point, even assuming that the plaintiff could establish his claim that he expended seventy five thousand dollars on the defendant's behalf, the plaintiff would see a return of five hundred and thirty percent!  This outrageously excessive gain is enough by itself to make the contract unconscionable.  *See,* Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 800 A.2d 915 (2002) (Option contract for sale of property at a price nearly half of its appraised value which potentially tied up the property for 11 months was substantively unconscionable); Ahern v. Knecht, 202 Ill. App.3d 709, 563 N.E.2d 787 (1990) (Contract was unconscionable where homeowner paid seven hundred and sixty two dollars for air conditioner repairs, and the service rendered was of little or no value); Kugler v. Romain, 58 N.J. 522, 545, 279 A.2d 640, 653 (1971)

(Where product was roughly two and one half times reasonable market price and had little or no value for intended purpose it constituted an unconscionable bargain); Greene v. Girbraltar Mortgage Investment Corp, 488 F.Supp. 177, 180 (1980) (Terms of the loan were unconscionably one sided where $2,710 loan was to return about $7,000 in interest and fees).  If charging one three times the value of what was given is unconscionable, then a fortiori the plaintiff's alleged contract whereby he is to collect five hundred thirty times what he expended is most certainly unconscionable.

In addition to the price, the far reaching, life-long term of the present alleged contract makes the agreement unconscionably one-sided. Country Club Soda Co. Inc. v. Weinberg, 3 Conn.Supp. 237 (1936) (Employment contract restricting a salesman from soliciting any of the customers of his former employer without limit as to time or territory goes beyond the bounds countenanced by our courts); Arnold v. United Companies Lending Corp., 204 W.Va. 229, 511 S.E.2d 854 (1998) (Where agreement was so one-sided that it constituted a substantial waiver of borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement was unconscionable.); Paragon Homes, Inc. v. Carter, 56 Misc.2d 463, 288 N.Y.S.2d 817 (1968) (Defendants signed a contract with a Maine corporation for work to be done on their Massachusetts home.  The contract stated that the agreement shall be deemed to have been made in New York.  The provision was unconscionable since its purpose was to make litigation more difficult for defendants.).

**IV.    The Alleged Contract Is Unenforceable Because It Seeks To Enforce An Impermissible Penalty.**

The plaintiff's alleged contract is also unenforceable because it seeks to impose an impermissible penalty. The plaintiff claims that under the terms of his alleged agreement, Mr. Camby could choose to be represented by another agent; but if he did so, the plaintiff would still be entitled the same amount of commission as if Camby had in fact chosen the plaintiff. Put differently, as a penalty for Camby choosing other representation, Camby would have to pay a life-long commission to the plaintiff in addition to paying the agent who is actually representing Camby. This provision represents an unenforceable penalty. CMG Realty of Connecticut, Inc. v. Colonnade One at Old Greenwich Limited Partnership, 36 Conn. App. 653 (1995) ('Bargained-for' alternative that allowed owner to make a $50,000 dollar payment in lieu of performance was an unenforceable penalty); American Car Rental, Inc. v. Commissioner of Consumer Protection, 273 Conn. 296, 306 (2005) (How the parties characterize the damages clause is not controlling). In the latter case, a rental car agreement provision stated that customers would be charged a fee of one-hundred and fifty dollars every time the rental car exceeded seventy-nine miles per hour for two minutes or more. The Connecticut Supreme Court ruled that the provision was an unenforceable penalty because the penalty greatly exceeded the damage that excessive speed caused to the vehicle. Id. The Court said, "The law is well established in this jurisdiction, as well as elsewhere, that a term in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid...A contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of the contracting party the threat of punishment for a breach." Id. (citations omitted). In the present case, the alleged provision would serve no purpose other than to deter Mr. Camby from choosing another agent. Zalonski v. McMahon, 3 Conn.Cir.Ct.

533, 220 A.2d 35 (1966) (Forfeiture clause amounted to a penalty where aim was to deter the plaintiffs from breaking the lease agreement).

There are instances where courts uphold 'liquidated damages' clauses, but those conditions are not present in this case. First of all, where a party injured by a breach of contract seeks to enforce a liquidated damages clause, "the burden of persuasion about the enforceability of the clause naturally rests with its proponent." Vines v. Orchard Hills, Inc., 181 Conn. 501, 511 (1980). Not only has the plaintiff utterly failed to put forth credible evidence concerning the reasonableness of this alleged provision, the plaintiff did not even bother to respond to the defendant's assertions that that the alleged contractual provision amounted to an unenforceable penalty. Courts will only uphold liquidated damages clauses when the following conditions are met: "(1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage." Norwalk Door Closer Co. Inc. v. The Eagle Lock and Screw Co., 153 Conn. 681, 686 (1966) *citing* Berger v. Shanahan, 142 Conn. 726, 732.

In the present case, any damage that was to be expected from a breach is not too difficult to prove, and the amount allegedly stipulated is not reasonable since it is greatly disproportionate to the amount of any damage the plaintiff may have suffered. *See,* Wyer v. Sonitrol Security Systems of Hartford, Inc., 46 Conn.Sup. 101, 107 (1999) (Damages were not uncertain or too difficult to prove arising from theft, and the liquidated damages of $198 was clearly disproportionate to the actual damages of $6800); PRF of Connecticut, Inc. v. Gosselin, 1993 WL 512430 *7 (Dec. 1, 1993)

(Aurigemma, J.) (Clause in a lease that stated that "no sums otherwise due" under the lease would be paid if a restrictive covenant was violated was not reasonable, and did not correspond to any reasonably anticipated diminution in income from a violation of the restrictive covenant.). In Norwalk Door Closer Co. *supra,* the Court stated:

> It is the function of the court at the *time of enforcement* to do justice. In a valid contract for liquidated damages, the parties are permitted…to estimate in advance the reasonably probable foreseeable damages which would arise in the event of a default. Implicit in the transaction is the premise that the sum agreed upon will be within the fair range of those damages which would be called for and provable had the parties resorted to proof. Consequently, if the damage envisioned by the parties never occurs…neither justice nor the intent of the parties is served by enforcement.

Id. at 268 (emphasis added). In Norwalk Door Closer Co, the court concluded that there was no reason to allow recovery of a one-hundred-thousand-dollar penalty where the loss suffered was not close to that amount. Id. In the present case, it is undisputed the plaintiff did not perform any negotiations or other duties that agents typically perform. The four million dollars in commissions that the plaintiff demands amounts to nothing more than a thinly veiled attempt to penalize Mr. Camby for not selecting the plaintiff as agent. Accordingly, the alleged contract should not be enforced.

### V. The Alleged Contract Is Unenforceable Because It Violates The Usury Laws.

The plaintiff has not cited a single case or statute to support his position that he could lawfully demand a 530% return on the money he allegedly spent on behalf of Mr. Camby and his friends. He argues that he is presently pursuing the money owed to him under a business contract. The money he allegedly spent was not to further a business interest. The plaintiff fully expected to

12

be reimbursed for the money that he allegedly provided for Mr. Camby's use before Mr. Camby earned a professional salary. The Connecticut usury statute provides that money loaned "directly or indirectly" in excess of the statutory 12% interest rate is prohibited. Conn. Gen. Stat. § 37-4. *See also,* Knights of Columbus Federal Credit Union v. Salisbury, 3 Conn. App. 201, 208 (1985) ("The substance of the transaction rather than its form determines whether a loan is usurious.").

**VI.     The Plaintiff Has Failed To Address Defendant's Unclean Hands Argument.**

The plaintiff has conceded that the doctrine of "unclean hands" bars the plaintiff from recovering in Unjust Enrichment since he failed to respond to that portion of the defendant's Motion for Summary Judgment.

## CONCLUSION

The contract alleged in this case is unenforceable because it is illegal, contrary to public policy, unconscionable on its face, seeks to exact an impermissible penalty and violates Connecticut usury laws. Furthermore, the plaintiff is barred by the doctrine of unclean hands from seeking any recovery in this matter. Accordingly, the Motion for Summary Judgment should be granted.

                                        THE DEFENDANT
                                        MARCUS CAMBY


                    By:_____
                       Patrick M. Noonan (ct00189)
                       Brock T. Dubin (ct18777)
                       Donahue, Durham & Noonan, P.C.
                       741 Boston Post Road
                       Guilford, CT 06437
                       (203) 458-9168


## **CERTIFICATION**

     This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

David K. Jaffe, Esq.
Brown, Paindiris & Scott
100 Pearl Street, 11th Floor
Hartford, CT 06103

Wesley S. Spears, Esq.
Attorney and Counselor at Law
53 Russ Street
Hartford, CT 06106

A. Paul Spinella, Esquire
Spinella & Associates
One Lewis Street
Hartford, CT 06103

                                          _____

                                          Patrick M. Noonan