DOCKET NO. CV 99 0150580 S                :        SUPERIOR COURT

JOHN LOUNSBURY                            :        J.D. OF WATERBURY

vs.                                       :        AT WATERBURY

MARCUS CAMBY, ET AL                       :

## MOTION FOR SUMMARY JUDGMENT

The defendant, Marcus Camby, moves for summary judgment in the above-referenced matter for four reasons. First, the plaintiff, John Lounsbury, has admitted that he accepted payment from Camby as full satisfaction of this claim for promissory estoppel. Second, even if plaintiff had not already released his claim, he has failed to adduce evidence sufficient to establish the essential elements of a claim for promissory estoppel. Third, the agreement alleged by the plaintiff is unenforceable because it is contrary to public policy. Fourth, plaintiff's claim is barred because he has unclean hands. A memorandum of law is being filed contemporaneously with this motion.

Trial in this matter is scheduled to commence on June 15, 2005.[1]

THE DEFENDANT,
MARCUS CAMBY
By:

Patrick M. Noonan
Brock T. Dubin
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

**TESTIMONY IS NOT REQUIRED**
**ORAL ARGUMENT IS NOT REQUESTED**

---

[1] At a pre-trial conference on January 5, 2005, Judge Agati gave the parties permission to file the present motion for summary judgment.

DONAHUE, DURHAM & NOONAN, P.C.
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168  •  FAX: (203) 458-4424
JURIS NO. 415438

## O R D E R

The foregoing motion having been heard, it is hereby Ordered that said motion be

Granted/Denied.

BY THE COURT

_____

Judge/Clerk

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

John Williams, Esq.
Williams, Polan & Pattis
51 Elm Street
New Haven, CT  06510

Eric D. Daniels, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

Neubert, Pepe & Monteith
195 Church Street
New Haven, CT 06510

_____
Patrick M. Noonan

DOCKET NO. CV 99 0150580 S       :     SUPERIOR COURT

JOHN LOUNSBURY               :     J.D. OF WATERBURY

vs.                               :     AT WATERBURY

MARCUS CAMBY, ET AL         :

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff, John Lounsbury, commenced the present action by writ summons and complaint dated January 4, 1999 against Marcus Camby and Proserv, Inc. to recover damages associated with an alleged breach of an illegal agreement. The only cause of action remaining against Camby sounds in promissory estoppel. Lounsbury testified at his deposition that he executed a valid release agreement prior to commencing this action and settled his claim against Camby for any alleged reliance damages – which are the only damages available under the promissory estoppel cause of action. Despite this admission, Lounsbury continues to prosecute his meritless claim.

### PROCEDURAL HISTORY

The plaintiff's original complaint alleged four separate counts against Camby. The First Count sounded in promissory estoppel. The Second and Third Counts sought damages for emotional distress. The Fourth Count sought damages pursuant to the Connecticut Unfair Trade Practices Act. On January 26, 2004, the Court, (Alvord, J.), granted Camby's Motion to Strike Counts Two, Three and Four. The Court did not grant the defendant's motion to strike the claim for promissory estoppel observing, "[t]he defendant's claim that the parties

agreement is in violation of a public policy does not challenge the plaintiff's cause of action, but rather is in the nature of a defense."    Accordingly, the court did not rule on the merits of Camby's arguments in support of his motion to strike the promissory estoppel claim.

## FACTUAL BACKGROUND

At all times referenced in the plaintiff's complaint, Marcus Camby was a student at the University of Massachusetts and a member of the University basketball team.  John Lounsbury, who wished to become a sports agent, attempted to induce Camby to sign a contract with him, despite the fact that Camby was prohibited by the NCAA to contract with a sports agent while in college. (See Plaintiff's Complaint at ¶ 2).  Lounsbury alleges that between  October, 1994 and April, 1996, he gave Camby and his friends and family money, gifts, gratuities and services in exchange for Camby's promise that he would employ Lounsbury to be his professional sports agent if he became a professional athlete at the end of his college basketball career. (See Plaintiff's Complaint at ¶5).  When Camby left college, he did not employ Lounsbury to be his professional sports agent; rather he signed an exclusive agency contract with the co-defendant Proserv, Inc.

At his deposition, Camby unequivocally testified that:  (1) he settled his promissory estoppel claim in 1996 (See Exhibit B at pp. 80-82, Lines 08-21); (2) the agreement between he and Camby was unethical and a violation of the NCAA regulations (See Exhibit D at p. 88-89); and (3) both he and Camby terminated the agreement (See Exhibit A at pp. 27-28; see also Exhibit C).

## STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Appleton v. Board of Education, 254 Conn. 205, 209 (2000). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Beers v. Bayliner Marine Corp., 236 Conn. 769, 771 n. 4 (1996). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." 2830 Whitney Avenue Corp. v. Heritage Canal Development Associates, Inc., 33 Conn. App. 563, 567 (1994). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." Id.

In the present case there are no genuine, specific issues of material fact that support plaintiff's claims. To the contrary, the record overwhelmingly demonstrates that the plaintiff's

claims are legally and factually insufficient as a matter of law.  Accordingly, Marcus Camby is entitled to summary judgment.

## ARGUMENT

I.    The Parties Entered Into An Accord and Satisfaction.

The plaintiff claims that he sustained damages of $40,000.00 in reliance on Camby's alleged promise that he would execute an exclusive agency contract with Lounsbury at the end of his NCAA career if he decided to play in the NBA.[1]  The only damages which the plaintiff is entitled to recover under a claim of promissory estoppel are the damages incurred in reliance on Camby's alleged promise.  "Relief may be limited to damages measured by the promissee's reliance."  Goldstein v. Unilever, 37 Conn. L. Rptr. 158 (Levin, J., May 3, 2004); See also Grant v. New Departure Mfg. Co., 85 Conn. 421, 425-26, 83 A.212 (1912); Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1272 (9th Cir. 1990); Stafford v. Morris Metal Products, 97 Conn. 650, 656, 118 A.37 (1922).  "Reliance damages may be the measure of damages in a claim based on a theory of promissory estoppel ... loss incurred by the plaintiff in reasonable reliance on the promise, i.e., reliance damages."  See Savage v. Shannon Construction Company, LLC, Superior Court of Connecticut, Judicial District of Waterbury, Docket No. CV 01 0166152S (Aug. 28, 2002) (Gallagher, J.).

Lounsbury testified repeatedly that he accepted $28,500.00 in full and final satisfaction of his reliance damages.

---

[1] Camby denies that there was any such agreement.

Q:      Okay. So, when you did cash that check, you agreed
        that it was a settlement of a claim that you had against
        Marcus?

A:      I cashed that check thinking that I was fortunate to get
        twenty-eight five of the $40,000 I gave him.

Q:      When you cashed that check, you believed and still
        believe today, that you were settling a claim that you
        had against Marcus?

A:      "Claim" is a word I don't quite understand. In
        layman's terms, I agreed that, in principle, Marcus took
        $40,000 from me; and Marcus and/or Pro Serve,
        whoever gave it to me, gave me back twenty-eight five
        in lieu of that $40,000.

Q:      Now, you agreed and you still believe today that
        $28,500 was in exchange for any right that you might
        have had to that $40,000.

A:      To that $40,000 only.

Q:      Okay, and you still believe that today? You have no
        right to that $40,000?

A:      No. What I believe is I took twenty-eight, I was able to
        justify and verify to Alex Johnson and James Bryant
        from Pro Serve, over the phone, while I was in Maine,
        they wanted me to prove the $40,000, and I was able to
        come up with twenty-eight five, and the twenty-eight I
        took was a settlement on the $40,000.

Q:      So, did you believe that when you cashed that check,
        you had a valid settlement agreement for that $40,000?

A:      For that $40,000 only, yes. I think I just stated that.

Q:      Did you believe that when you cashed the check, this
        letter constituted a valid settlement agreement?

A:      Pertaining to that $40,000.

5

See Exhibit B, deposition of John Lounsbury, Vol. III, pp. 80-82, Lines 08-21.

Lounsbury's acceptance of $28,500.00 in full satisfaction of the $40,000.00 he allegedly paid Camby constituted an accord and satisfaction. Accordingly, the $40,000.00 debt is discharged in its entirety. "Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration." County Fire Door Corporation v. C.F. Wooding Co., 202 Conn. 277, 281, 520 A.2d 1028 (1987). "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim ... An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligors existing duty ... Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration." Schoonmaker v. Brunoli, 265 Conn. 210, 277, 828 A.2d 64 (2003). Since it is undisputed that the parties entered into an accord and satisfaction, Lounsbury is barred from seeking any recovery for damages under a promissory estoppel claim.

II.    The Plaintiff Cannot Establish The Essential Elements Of A Claim For Promissory Estoppel.

In order to prevail in a claim for promissory estoppel, a plaintiff must plead and prove the following four elements: (1) the promisor made a clear and definite promise; (2) the promisee reasonably relied on the promise; (3) the promise induced the action taken by the

6

promisee to the detriment of the promisee; and (4) injustice can be avoided only by

enforcement of the promise. D'Ulisse-Cupo v Board of Directors at Notre Dame High

School, 202 Conn. 206, 213, 520 A.2d 217 (1987). The present plaintiff is unable to

establish any of these elements.

    A.    The Alleged Promise Between Lounsbury And Camby Was Not A Clear And
           Definite Promise.

"A fundamental element of promissory estoppel, therefore, is the existence of a clear

and definite promise which a promisor could reasonably have expected to induce reliance.

Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an

objective standard, he had no reason to expect any reliance at all." D'Ulisse-Cupo v. Board of

Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987). The

promise must be clear and definite and must contain the material terms that are essential to

the formation of a contract. Id. at 215. The plaintiff in the present case has failed to identify

a "clear and definite promise" between himself and Camby.

In D'Ulisse-Cupo, the plaintiff, a teacher, sought damages under a theory of

promissory estoppel where the school principal orally represented to her during a

performance evaluation that she would be permitted to teach a certain course during the

following academic year. On at least two subsequent occasions, the plaintiff was given

assurances that her contract would be extended for the following year. The plaintiff's

contract, however, was not renewed. The court determined that the promises made to the

plaintiff regarding her employment were not "clear and definite" and could not support a

promissory estoppel claim. Specifically, the court determined that because the defendant's

7

alleged promises were for employment in the future rather than for immediate employment, no "clear and definite" promise could exist. "Contrary to the plaintiff's assertion, these representations manifested no present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." Id. at 215.

The present plaintiff has failed to establish that the agreement between himself and Camby constituted a promise to enter into an immediate contract. Instead Lounsbury testified that Camby made a promise to him in October, 1994, to enter into an exclusive agency agreement of unspecified terms at an unspecified date in the future.[2] The contract was conditional on Camby becoming a professional athlete. (See Plaintiff's Revised Complaint at ¶5). The present plaintiff, like the plaintiff in D'Ulisse-Cupo, claims to have had an agreement for employment in the future. Since there was no present intent to enter into an immediate contract, no "clear and definite promise" can be said to have existed.

The promise which Lounsbury allegedly relied on contains none of the essential terms of a contract, i.e. duration of contract, amount of agency fee, etc. Indeed, the Court in D'Ulisse-Cupo, held that no "clear and definite" promise can exist where the alleged promise fails to set forth terms essential to a contract:

> Furthermore, none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits. At most, the defendants made representations to the plaintiff concerning the expectation of a future contract, but they

---

[2] The Complaint alleges that the contract was to be entered into "when Camby ended his college basketball career and became a professional athlete." (See Plaintiff's Revised Complaint at ¶5)(emphasis supplied).

8

> stopped short of making the plaintiff a definite promise of
> employment on which she could reasonably have relied.

D'Ulisse-Cupo, 202 Conn. at 215.

At his deposition, Lounsbury admitted that he did not discuss any contract terms with Camby: "I never sat down with Marcus in this particular time and said, 'Let's talk about an oral contract.' (See Exhibit A, deposition of John Lounsbury, Vol. II at p. 32, lines 18-22). "We had discussions ... in general continuously about how we were going to make money together and we were going to get rich. I mean, if that's the case, specifically a period of two, three, ten, twenty years, that was never specified." (See deposition of John Lounsbury, Vol. II at p. 36, lines 1-6, attached as Exhibit A). Lounsbury's failure to identify a single term of the alleged agreement is fatal to his claim for promissory estoppel.

B.    Lounsbury Did Not Take Any Action In Reliance On Any Promise Made By Camby.

To succeed on a claim of promissory estoppel, the party seeking to invoke the doctrine must have relied on the other party's promise. D'Ulisse-Cupo v. Board of Directors at Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217. The reliance must result in a detrimental change in the plaintiff's position. 3A. Corbin, Contracts (Rev. Ed. 1996) at § 8.9, p. 30 ("The action or forbearance must amount to a detrimental change of position."); See also W. v. W.,·256 Conn. 657, 661, 779 A.2d 716 (2001) (promissee "must actually change his position or do something to his injury which he otherwise would not have done.").

Lounsbury unequivocally testified that he did not give anything to Camby in reliance on any promise, thereby undermining his entire claim for promissory estoppel.

9

> The only thing that I differ with you on that, the gifts and gratuities, as you call them, that I gave Marcus was not a contingency or promises that I'll give you this, and you're going to be my client. I mean, that just – you know, that was not – there ws never an agreement that I'm going to give you gifts, and in turn of the gifts, you're going to be my client. I was going to be his client. He got the gifts as we went along.

See Exhibit B, deposition of John Lounsbury, Vol. III, pp. 39-40, Lines 21-06.

* * *

> Q:    You never had any arrangement where you told Marcus Camby, "I will provide you with gifts or money if you sign with me?"

> A:    No. I told him, "Whatever you need." I mean, Whatever you need, I'll give you ." We had an agreement that, you know, he was going to sign with me.

See Exhibit B, deposition of John Lounsbury, Vol. III, pp. 40-41, Lines 24-04.

Since Lounsbury did not change his position in reliance on any alleged promise, his claim for promissory estoppel would fail as a matter of law, even if he had not already released the claim.

C.    The Alleged Promise Did Not Induce Any Action By Lounsbury.

A fundamental element of promissory estoppel is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise which, if judged by an objective standard, one would not expect to induce. See Finley v. Aetna Life & Casualty, 202 Conn. 190, 205, 520 A.2d 208 (1987).

10

Lounsbury's argument is premised on the belief that he and Camby had an agreement
that Camby would sign a contract with him after his NCAA career ended. To succeed on this
claim, Lounsbury's reliance on any alleged promise must be reasonable based on an
"objective standard." See Finley, Supra, 202 Conn. at 205. Attached hereto as Exhibit D is a
letter dated March 12, 1996 from Camby which Lounsbury acknowledges receiving during
the period of time he claims he and Camby had an agreement. In the letter, Camby states, "I
know how much competition there is about who will represent me, but I promise you I have
not made a decision. People who try to contact me or my people will show me that they are
not looking out for my best interests. I will not hire a person who does not respect me. Dave
said to tell you this means everyone; a level playing field for all. No exceptions!" See
Exhibit C. Lounsbury cannot credibly claim that he reasonably relied on a "clear and
definite" promise to become Camby's agent when Camby informed Lounsbury in this
correspondence that he did not yet know which agent he would choose. Certainly, based on
an "objective standard," Camby did not make a promise which Lounsbury should have relied
on.

Lounsbury's claim that he detrimentally relied on this alleged promise is further
undercut by the fact that he terminated the alleged agreement shortly after entering into it:

> And I confronted Marcus in front of the apartment in a rather
> upset tone saying give me the keys. I think I might have taken
> the beeper back then, I am not positive. I said give me the
> keys, I'm done with you. I mean relationships are a two way
> street, and by you showing lack of responsibility, you know,
> you go your way ... And I basically told him, I said hey, I am
> not going to waste my time anymore, if this is the way you're
> going to treat me and I left.

11

(See Exhibit A, deposition of John Lounsbury, Vol. II at p. 27-28).

Courts have routinely dismissed similar cases where the alleged promise was not sufficiently definite so as to permit the plaintiff to have reasonably relied on it induce reliance by the plaintiff. See Manning v. Cigna Corp., 807 Supp. 889 (D.Conn. 1991) (the court dismissed a claim for promissory estoppel where employer's oral promises of "continuous and secure employment" and a probationary period prior to discharge were insufficiently definite and promissory to form the basis of a promissory estoppel claim.); Dacourt Group, Inc. v. Babcock Industries, Inc., 747 F.Supp. 157 (D.Conn.1990) (the court granted summary judgment on claim of promissory estoppel where representations were not "clear and unambiguous promises" sufficient to support a claim for promissory estoppel.); Yost v. Ex-Cello Corp., 18 Conn.Law Trib. No. 2, p. 2 (Super.Ct., January 13, 1992, Carbranes, J.) (the court granted summary judgment on a count of promissory estoppel where "any reliance by the plaintiff on his supervisor's alleged oral statement that he would be covered by the employee handbook was unreasonable since the handbook stated explicitly that it was applicable to hourly workers only.").

> D.    The Plaintiff Has Failed To State A Claim For Promissory Estoppel Because Enforcement Of The Alleged Promise Would Create An Injustice Rather Than Avoid One.

Under the doctrine of promissory estoppel, "a promise which the promissor should expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." D'Ulisse-Cupo v. Board of Directors of Notre Dame High

School, 202 Conn. 206, 213, 520 A.2d 217 (1987) (emphasis supplied). Enforcement of the promise alleged in the present plaintiff's complaint would create an injustice, since the contract which the plaintiff contemplated is illegal and against public policy.

"The parties cannot expect conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect the court to enforce such a contract between them." State v. Council IV AFSCME, 27 Conn. App. 635, 640 (1992). "[I]t is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract...." Solomon v. Gilmore, 248 Conn. 769, 785, 731 A.2d 280 (1999).

The alleged contract which is the subject of the present plaintiff's complaint is illegal, against public policy, unfair and deceptive. Accordingly, the alleged contract between Camby and Lounsbury is unenforceable and a claim for promissory estoppel arising out of this alleged contract is also unenforceable.

1.  Connecticut Law Prohibits A College Athlete From Entering Into Any Agreement With An Agent Before The Athlete's Eligibility For Collegiate Athletics Expires and Prohibits An Agent From Giving Anything of Value to A College Athlete Or His Family.

During the time Lounsbury alleged this agreement existed, Camby was a student athlete at the University of Massachusetts and still eligible to compete in college athletics.

13

This alleged contract between Camby and Lounsbury is specifically prohibited by Conn. Gen. Stat. §20-555(4), which states: "An athlete agent shall not enter into an oral or written agent contract or professional sport services contract with an athlete before the athlete's eligibility for collegiate athletics expires." Conn. Gen. Stat. §20-555(4).[3] Sports agents are specifically prohibited from providing anything of value to an athlete or his family or friends. Conn. Gen. Stat. §20-555(5) states: "An athlete agent shall not give, offer or promise anything of value to an athlete, his guardian, or to any member of the athlete's immediate family before the athlete's eligibility for collegiate athletics expires." See Conn. Gen. Stat. §20-555(5).

The alleged contract constitutes an illegal agreement between Camby and Lounsbury and cannot be enforced by this Court. Conn. Gen. Stat. §20-557(d) provides: "any person who violates any provision of sections 20-553 to 20-558, inclusive...shall be guilty of a class

---

[3] Prior to 1997, "athlete" was defined by Conn. Gen. Stat. §20-553 as: "an individual at an institution of higher education located in this state who engages in... any inter-collegiate sporting event.". See P.A. 95-331. The statute was amended in 1997 to define an athlete as, "an individual enrolled in an institute of higher education and attending grades eleven or twelve in any school...who engages in...any intercollegiate sporting event." P.A. 97-120. The public policy expressed by the legislative history of Conn. Gen. Stat. §20-553 in 1995 was to protect student athletes who were *residents* of the State of Connecticut. (See Exhibit L.) Indeed, at the time this contract was allegedly entered into, Marcus Camby was a *resident* of the State of Connecticut. Thus, it was the intent of the legislature to prohibit the formation of the very contract which is at issue in the present complaint.

B misdemeanor." Conn. Gen. Stat. §20-557(d).[4]  (See Exhibit L).  If an action is brought in

which it is necessary to prove an illegal contract in order to maintain the action, courts will

not enforce the contract, nor will they enforce any alleged right directly springing from such

contract.  Solomon v. Gilmore, 248 Conn. 769, 785, 731 A.2d 280 (1999).  Therefore, the

alleged contract is unenforceable.[5]

      2.     The Plaintiff's Conduct Is Unfair And Deceptive.

Contracts such as the one alleged by the plaintiff have been legislatively defined as

unfair and deceptive: "a violation of any provision of sections 20-553 to 20-558, inclusive, or

any regulation adopted pursuant to section 20-556 shall be deemed an unfair or deceptive

trade practice. . . "  See Conn. Gen. Stat. §20-557(c) (emphasis supplied).

---

[4] Conn. Gen. Stat. § 20-557(d) was enacted in 1997. Despite that, the statute applies retroactively.  Legislation intended to clarify the original intent of an earlier statute "necessarily has retroactive effect." Toise v. Rowe, 234 Conn. 623, 628 707 A.2d 25 (1998). "We generally look to the statutory language *and the pertinent legislative history* to ascertain whether the legislature intended that the amendment be given retroactive effect." (Emphasis added). In re Eden F., 250 Conn. 674, 695-96 (1999). The legislative history of Conn. Gen. Stat. §20-557(d) indicates that it is the purpose of the statute to *clarify* the penalties an agent would suffer in the event he attempted to contract with a student athlete prior to the expiration of his collegiate eligibility: "Finally, Section 4 further *clarifies* the penalties. The penalties shall order restitution, a $1,000 fine, plus any profits derived as a result of any illegal activities, minus those paid in restitution, and finally, anyone violating the section will be guilty of a Class B misdemeanor." See Exhibit L. "An amendment which, in effect, construes and clarifies a prior statute must be accepted as a legislative declaration of the meaning of the original act." Kluttz v. Howard, 228 Conn. 41, 409 636 A.2d 1 (1994); see also, Shelton v. Commissioner of Environmental Protection, 193 Conn. 506, 513-14 479 A.2d 208 (1984). "An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." State v. Magnano, 204 Conn. 259, 284 528 A.2d 760 (1997); see also, Circle Lanes of Fairfield, Inc. v. Fay, 195 Conn. 534, 540, 49 A.2d 363 (1985). "To determine whether an act should be characterized as clarified legislation, we look to the legislative history to determine legislative intent." Reliance Ins. Co. v. American Casualty Ins. Co. of Redding, Pennsylvania, 238 Conn. 235, 238; Conn. 285, 290 679 A.2d 925 (1996). Conn. Gen. Stat. §20-555 was in existence in 1995 during the time alleged in the complaint. Accordingly, the conduct, while not criminal, was prohibited.

[5] The fact that Camby may have realized a windfall by receiving gifts, gratuities and services is of no consequence to the legal analysis of the plaintiff's claim. "To the extent that our conclusion might be viewed as allowing the defendants to receive a windfall at the expense of the plaintiffs, we note that this result is common, and, as we previously have determined, necessary in many cases in which contracts are deemed unenforceable on the grounds of furthering overriding public policies." Solomon v. Gilmore, 248 Conn. 769 (1999).

Ironically, the Department of Consumer Protection reprimanded Lounsbury for similar conduct on October 27, 1997 for providing airline tickets to two student athletes who were playing basketball at the University of Connecticut in an attempt to entice them into entering into player-agent contract. (See Exhibit H). The Department of Consumer Protection specifically determined that this conduct constituted a violation of the Connecticut Unfair Trade Practices Act. (See Exhibit H). The Department of Consumer Protection required Lounsbury to execute a Consent Order wherein he agreed to "cease and desist from giving, offering or promising anything of value to an athlete. . . or to any member of the athlete's immediate family before the athlete's eligibility for collegiate athletic expires." (See Exhibit H). The Consent Order identified his conduct as a violation of CUTPA[6] and ordered that any violation of the Consent Order would be adjudicated as a violation of CUTPA.[7] Accordingly, the State of Connecticut has determined that the type of conduct alleged by Lounsbury in the present action is unfair and deceptive and a violation of CUPTA. Thus the alleged contract is unenforceable. See State v. Council IU AFSCME, 27 Conn. App. at 640.

III.     The Court Cannot Enforce The Alleged Agreement As It Is Against Public Policy.

"[I]t is well established that contracts that violate public policy are unenforceable." Solomon v. Gilmore, 248 Conn. 769, 774, 731 A.2d 280 (1999). Lounsbury requests this

---

[6] See Exhibit H: ("The Respondent, John Lounsbury, an individual, is hereby orderd to CEASE AND DESIST from any further violations of Chapter 735a of the Connecticut General Statutes. . ."

[7] See Exhibit H: ("Any violation of this CONSENT ORDER will be enforced in accordance with Section 42-110k of the Connecticut General Statutes.")

16

court to enforce an alleged contract which specifically violates Connecticut law (as discussed above) and the public policy considerations outlined in the Constitution and Operating By-Laws of the NCAA. It is undisputed that Lounsbury's conduct was a violation of NCAA Rules.[8]

The NCAA Division I Operating Manual in effect at time of the alleged conduct prohibited a college athlete from entering into *any* agreement with a prospective sports agent while eligible to compete in college athletics. Specifically §12.3.1 states:

> An individual shall be ineligible for participation in an intercollegiate sport if he or she has ever agreed (orally or in writing) to be represented by an agent for the purpose of marketing his or her athletics ability or reputation in that sport.

---

[8] Lounsbury does not dispute that his conduct violated the NCAA roles.

| | |
|---|---|
| Q: | Were you familiar with the concept that it was prohibited by the NCAA guidelines to provide things of value, gifts, gratuities, cash, or services to a student athlete? |
| A: | Yes. |
| Q: | You were familiar with that concept? |
| A: | Yes. |
| Q: | Despite your familiarity with the concept, you did it anyway? |
| A: | Correct. |

See Exhibit D, deposition of John Lounsbury, Vol I at p. 89.

| | |
|---|---|
| Q: | Did you ever have an understanding of whether or not your oral agreement was in violation of the NCAA Rules? |
| A: | Yes. |
| Q: | What was your understanding? |
| A: | That it was in violation. |

See Exhibit I, deposition of John Lounsbury, Vol. III at p. 26-27, lines 25-05).

| | |
|---|---|
| Q: | Can we agree that it was unethical? |
| A: | Yes. |
| Q: | Can we agree that that was a violation of the NCAA Rules? |
| A: | Yes. |
| Q: | Can we agree that at the time you were doing it, you were aware that it was a violation? |
| A: | Yes. |

(<u>See</u> Exhibits J & K)

Section 12.3.1.1 states:

> An individual shall be ineligible per 12.3.1 if he or she enters into a verbal or written agreement with an agent for representation in future professional sports negotiations that are to take place after the individual has completed his or her eligibility in that sport.

(<u>See</u> Exhibits J & K)

Finally, Section 12.3.1.2 states:

> An individual shall be ineligible per 12.3.1 if he or she (or his relatives or friends) accepts transportation or other benefits from any person who wishes to represent the individual in the marketing of his or her athletics ability. The receipt of such expenses constitutes compensation based on athletics skill and is an extra benefit not available to the student body in general.

(<u>See</u> Exhibits J & K)

These sections clearly condemn the agreement which Lounsbury, through this lawsuit, is asking this court to enforce.

The Basic Purpose of the NCAA Constitution, which governs the conduct of collegiate athletics, is to "maintain intercollegiate athletics as an integral part of the educational program and the athlete as an integral part of the student body and, by doing so, retain a clear line of demarcation between intercollegiate athletics and professional sports." <u>See</u> <u>NCAA Constitution</u> §1.3.1 (Exhibit J); <u>See also</u> <u>NCAA Constitution</u> §2.8: ("Student-athletes shall be amateurs in an intercollegiate sport, and their participation should be motivated primarily by education and by the physical, mental and social benefits to be derived. Student participation in intercollegiate athletics is an avocation, and student athletes

should be protected from exploitation by professional and commercial enterprise.") (Exhibit

J)

Indeed, courts are reluctant to interfere with or question the self-policing policies

promulgated by the NCAA:

> The NCAA is, without doubt, a highly visible and powerful
> institution, holding, as it does, a virtual monopoly on high-level
> intercollegiate athletic competition in the United States.
> Although the NCAA, like other private businesses and
> organizations, is subject to numerous regulations, neither
> Congress nor our legislature has seen fit to interfere with its
> general rule-making functions, whether in the area of drug
> testing or other fields.  Therefore, we regard the NCAA's
> stated motives and objectives, not with hostility or intense
> skepticism, but with a respectable presumption of validity.

> Hill v. National Collegiate  Athletic Association, 26 Cal.
> Rptr.2d 834 (January 28, 1994).

Similarly, the Supreme Court has held that the NCAA is the "guardian of an important

American tradition, the NCAA's motives must be accorded a respectful presumption of

validity..." National Collegiate Athletic Association v. Board of Regents of the University

of Oklahoma, 468 U.S. 85, 66, 104 S.Ct. 29, 48 (1984).

The strong public policy against the formation of contracts between agents and

student athletes promulgated by the NCAA was designed to protect student athletes from the

exact conduct at issue in the present dispute. To permit the plaintiff to enforce this illegal

contract through a claim for promissory estoppel would not "avoid an injustice." D'Ulisse-

Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987).

Instead, such enforcement would create an injustice.

19

IV.    The Plaintiff's Claim is Barred By The Doctrine of Unclean Hands.

One seeking equitable redress from the court must come with "clean hands." "The

doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief,

he must show that his conduct has been fair, equitable and honest as to the particular

controversy in issue." Bauer v. Waste Management of Connecticut, Inc., 239 Conn. 515,

525, 686 A.2d 481 (1996). "[F]or a complainant to show that he is entitled to the benefit of

equity he must establish that he comes into court with clean hands.... The clean hands

doctrine is applied not for the protection of the parties but for the protection of the court.... It

is applied ... for the advancement of right and justice." McCarthy v. McCarthy, 55 Conn.App.

326, 335, 752 A.2d 1093 (1999), cert. denied, 252 Conn. 923, 752 A.2d 1081 (2000).  The

present plaintiff cannot seek enforcement of the present promise as he does not come before

the court with "clean hands."  As noted above, Lounsbury attempted to induce Camby to

enter into a contract that is illegal.

The fact that Camby may have realized a windfall by receiving gifts, gratuities and

services is of no consequence to the legal analysis of plaintiff's claims. "To the extent that

our conclusion might be viewed as allowing the defendants to receive a windfall at the

expense of the plaintiffs, we note that this result is common, and, as we previously have

determined, necessary in many cases in which contracts are deemed unenforceable on the

grounds of furthering overriding public policies." Solomon v. Gilmore, 248 Conn. 769

(1999).

20

## CONCLUSION

Defendant's Motion for Summary Judgment should be granted for four reasons. First, the plaintiff accepted the sum of $28,500 as full satisfaction for any reliance damages. Second, even if the plaintiff had not already released this claim, the evidence adduced during discovery establishes that the plaintiff does not have evidence sufficient to establish the essential requirements if a claim for promissory estoppel. Third, the claimed agreement may not be enforced, since it is contrary to public policy. Fourth, plaintiff may not enforce this alleged agreement since he has unclean hands. Accordingly, defendant's Motion for Summary Judgment should be granted.

THE DEFENDANT,
MARCUS CAMBY

By:

Patrick M. Noonan
Brock T. Dubin
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

21

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

John Williams, Esq.
Williams, Polan & Pattis
51 Elm Street
New Haven, CT  06510

Eric D. Daniels, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

Neubert, Pepe & Monteith
195 Church Street
New Haven, CT 06510

_____
Patrick M. Noonan