| | | |
|---|---|---|
| DOCKET NO. CV 99 0150580 S | : | SUPERIOR COURT |
| JOHN LOUNSBURY | : | J.D. OF WATERBURY |
| vs. | : | AT WATERBURY |
| MARCUS CAMBY, ET AL | : | MARCH 27, 2005 |

## MARCUS CAMBY'S REPLY TO LOUNSBURY'S OBJECTION TO CAMBY'S MOTION FOR SUMMARY JUDGMENT

The defendant Marcus Camby submits the present reply to the plaintiff's objection to his motion for summary judgment. Lounsbury, in an attempt to overcome summary judgment, has submitted an affidavit contrary to his deposition testimony and changed his entire theory of liability only three months prior to trial and nine years since the inception of this litigation by claiming that his sole claim against Camby is actually a breach of contract claim rather than a promissory estoppel claim. The actual reason the Lounsbury makes this argument at this time, despite what he states in his brief, is that Lounsbury, at his recent deposition, foreclosed any possibility he has of prevailing under a theory of promissory estoppel.

1. **The Plaintiff Testified Unequivocally That He Settled His Claim Against Marcus Camby**

It is undisputed that Lounsbury settled his claim for promissory estoppel. Lounsbury accepted a check from Camby for $28,5000.00 as full satisfaction of his claimed damaged of $40,000.00 and testified at his deposition that he understands that he waived his right to collect the $40,000.00 as a result of that valid settlement.

> Q: Okay. So, when you did cash that check, you agreed that it was a settlement of a claim that you had against Marcus?
>
> A: I cashed that check thinking that I was fortunate to get twenty-eight five of the $40,000 I gave him.
>
> \*\*\*\*\*
>
> Q: Now, you agreed and you still believe today that $28,500 was in exchange for any right that you might have had to that $40,000.
>
> A: To that $40,000 only.
>
> \*\*\*\*\*
>
> Q: So, did you believe that when you cashed that check, you had a valid settlement agreement for that $40,000?
>
> A: For that $40,000 only, yes. I think I just stated that.
>
> Q: Did you believe that when you cashed the check, this letter constituted a valid settlement agreement?
>
> A: Pertaining to that $40,000.

See Camby's memorandum in chief at Exhibit B, deposition of John Lounsbury, Vol. III, pp. 80-82, Lines 08-21.

Lounsbury now submits an entirely disingenuous argument contrary to his deposition testimony. Lounsbury argues that the accord and satisfaction is void because Camby breached the terms of the settlement agreement when he allegedly spoke to a newspaper reporter about Lounsbury's unethical conduct.

This argument is absurd. First there is no evidence the Camby ever signed a settlement agreement. Indeed, Lounsbury testified at his deposition that Camby never signed the agreement, "I think I stated to the best of my knowledge, Marcus never signed one." (See Exhibit A at p. 85). The only settlement agreement in evidence is unsigned by either party however, Lounsbury at his deposition agreed that he - not Camby - signed the settlement agreement.

Second, the settlement agreement requires Lounsbury not Camby, to keep the terms of the settlement confidential in consideration of the $28,500.00 which Camby paid to him. Lounsbury references a settlement agreement attached as Exhibit G to Camby's memorandum in chief – a document which Lounsbury at his deposition testified he could neither read nor understand: "Well, considering there's a lot of words missing, I really don't have an understanding right now.". See Exhibit A Deposition of Lounsbury at pp. 83-84. Further Attorney Allentuch attempted to direct his client not to answer questions about the agreement. (See Exhibit A at p.85).

A review of the settlement agreement attached to Camby's memorandum in chief as Exhibit G makes clear that Lounsbury is now adding missing or illegible words to the

3

document to support his argument. Lounsbury argues that the settlement agreement requires that Camby keep the terms of the settlement confidential:

> You agree that both *you and I* shall keep this settlement, and indebtedness underlying the settlement and every fact, matter, negotiation, statement or other evidence of this alleged debt and this agreement absolutely private. (emphasis added)

See Lounsbury's memorandum at p. 9.

However, a review of this document – which just months ago Lounsbury could not read – reveals that the words "you and I" are for some reason omitted from the agreement. What the document clearly does reveal is that Lounsbury – not Camby – is prohibited from disclosing the terms of the agreement by making Lounsbury return the settlement proceeds: "If *you* disclose any of these matters to any individual, entity person, ... or otherwise communicate it to anyone but myself, you will be liable to me for return of . . . monies paid hereunder, including costs and attorney's fees required to affect such return, and all your rights under this agreement shall become null and void." (See Exhibit G attached to Camby's memorandum on in chief) (emphasis added). Lounsbury is the only party charged with keeping it confidential – not Camby. Camby's sole duty under the accord and satisfaction agreement was to pay Lounsbury.

Finally, Lounsbury accepted and cashed the settlement proceeds and at no point since Lounsbury signed the settlement agreement in 1996 has he returned to Camby the settlement proceeds in the amount of $28,500.00. The Court in Tolland Enterprises v. Scan Code, Inc. 1995 WL 617356 (Conn.Super.) held "once the plaintiff cashed the defendant's check, an accord and satisfaction was validated." Id. Indeed, once Lounsbury received Camby's check

for $28,500.00 in 1996, he was barred from pursuing any further claim against Camby. "Upon acceptance of the offer of accord, *the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration.*" County Fire Door Corporation v. C.F. Wooding Co., 202 Conn. 277, 281, 520 A.2d 1028 (1987) (emphasis added). Now, only two days before argument on Camby's motion for summary judgment – and nine years after accepting Camby's check does Lounsbury argue that the settlement agreement was void despite accepting the $28,500.00 and testifying that he believed he had no claim to the underlying debt.

The plaintiff in support of his argument relies solely on Audubon Parking Assoc. Ltd. v. Barclay and Stubbs, Inc. 225 Conn. 804 (1993). The plaintiff's reliance on this argument is misguided and, in fact, supports Camby's position. The court in Audubon Parking Assoc. Ltd. looked to the plaintiff's conduct in determining which remedy it should allow the plaintiff to pursue, i.e. (1) the accord and satisfaction agreement or (2) the underlying agreement. The court noted that the doctrine of election of remedies is not intended to prevent recourse to any remedy, but to prevent double redress for a single wrong. Audubon Parking Assoc. Ltd 225 Conn at 809, citing 25 Am.Jur.2d, Election of Remedies § 1; see also National Transportation Co. v. Toquet, 123 Conn. 468, 479, 196 A. 344 (1937); DeLucia v. Burns, 11 Conn.App. 439, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935. The conduct of the present plaintiff is entirely consistent with a finding that both parties

believed that the accord and satisfaction was valid[1]. The plaintiff argues that since there was an alleged breach of the accord, Lounsbury can maintain his suit for the underlying debt in the amount of $40,000.00. This argument is nonsensical since <u>there was no breach of the accord</u>, Lounsbury (1) accepted $28,500.00 as full and final satisfaction of his debt; (2) cashed the check; and (3) testified that he believed he has waived any right to the remainder of the underlying debt. Further, the agreement never required that Camby keep the settlement confidential. The plaintiff is now making every attempt to obtain a double recovery.

2. The Plaintiff Has Plead A Claim For Promissory Estoppel Not Breach Of Contract.

Lounsbury's argument that he has plead a claim for breach of contract rather than a promissory estoppel is disturbing. Indeed the court need only review the plaintiff's complaint to determine that <u>since the inception of this case</u> Lounsbury's claim against Camby sounded in promissory estoppel not breach of contract.

> 5. From late October of 1994 until April of 1996, in the State of Connecticut and elsewhere, the defendant Camby repeatedly promised the plaintiff that if the plaintiff would supply him and his friends and family with money, gifts, gratuities and services, defendant Camby would sign an exclusive agency contract with the plaintiff and become a professional athlete.
>
> 6. As a result, from October of 1994 until April of 1996, the plaintiff, in reasonable reliance upon the aforesaid promises, supplied defendant Camby, his friends and his family, with money, gifts, gratuities and services. (<u>See</u> Plaintiff's Revised Complaint)

---

[1] Indeed Lounsbury at his deposition testified that he believed the agreement was still valid today. Q: Now, you agreed and you still believe today that $28,500 was in exchange for any right that you might have had to that $40,000. A: To that $40,000 only. <u>See</u> Camby's

6

Attorney Allentuch now seeks to change his theory of liability since, unbeknownst to him at the time of his clients deposition, the only measure of damages in a promissory estoppel claim are reliance damages. By changing his claim from that of promissory estoppel to breach of contract, Lounsbury will effectively be altering his claim for damages from $40,000.00 to well over one million dollars. Such an amendment is obviously prejudicial to Camby six years after the inception of this litigation.

Lounsbury's argument that counsel for Camby has treated this as a breach of contract action is perplexing. Indeed, Camby submitted a motion to strike dated October 8, 2003 replete with argument in support of his motion to strike the *promissory estoppel* claim. There is no indication whatsoever in the brief that the undersigned believed that Lounsbury had instead plead a breach of contract. Further, the undersigned has on at least one occasion discussed with Attorney Allentuch at a pretrial before Judge Agati that the promissory estoppel claim has no merit because Lounsbury has no recoverable damages. If Attorney Allentuch truly believed that he plead a breach of contract claim – which he did not – he should have amended his complaint. Instead Lounsbury attempts to amend his claim to set forth an entirely new cause of action (1) two days before oral argument on Camby's motion for summary judgment; (2) six years after the commencement of this litigation; and (3) three months before trial.

Even if the plaintiff did plead a breach of oral contract – which he did not – the claim still fails since the agreement, by Lounsbury's own admission was not clear and definite. "To

---

memorandum in chief at Exhibit B, deposition of John Lounsbury, Vol. III, pp. 80-82, Lines 08-21

7

form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are **definite and certain** between the parties ... If the minds of the parties have not truly met, no enforceable contract exists ... [A]n agreement must be met, **definite and certain** as to its terms and requirements ... So long as any essential matters are left open for further consideration, the contract is not complete ... A contract requires a clear and definite promise." Geary v. Wenrworth Laboratories, Inc., 60 Conn.App. 622, 627-28, 760 A.2d 969 (2000); See also L & R Realty v. Connecticut National Bank, 53 Conn.App. 524, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). A contract requires a clear and definite promise. See Suffield Development Associates Ltd. Partnership v. Society for Savings, 243 Conn. 832, 843, 708 A.2d 1361 (1998).

The present plaintiff has failed to establish that the agreement between himself and Camby constituted a promise to enter into an immediate contract. Instead Lounsbury testified that Camby made a promise to him in October, 1994, to enter into an exclusive agency agreement of unspecified terms at an unspecified date in the future.[2] The contract was <u>conditional</u> on Camby becoming a professional athlete. (See Plaintiff's Revised Complaint at ¶5).

At his deposition, Lounsbury admitted that he did not discuss any contract terms with Camby: "I never sat down with Marcus in this particular time and said, 'Let's talk about an oral contract.' (See Exhibit A, deposition of John Lounsbury, Vol. II at p. 32, lines 18-22). "We had discussions ... in general continuously about how we were going to make money

---

[2] The Complaint alleges that the contract was to be entered into "when Camby ended his college basketball career <u>and became a professional athlete</u>." (See Plaintiff's Revised Complaint at ¶5)(emphasis supplied).

8

together and we were going to get rich. I mean, if that's the case, specifically a period of two, three, ten, twenty years, that was never specified." (See deposition of John Lounsbury, Vol. II at p. 36, lines 1-6, attached as Exhibit A). Lounsbury's failure to identify a single term of the alleged agreement is fatal to his claim.

Finally, Lounsbury has failed to respond to a single argument submitted by the defendant regarding Lounsbury's inability to prove a claim for promissory estoppel. By Lounsbury's own admission his conduct does not support a claim for promissory estoppel Again, that is the sole reason that Lounsbury had now switched his theory of liability only three months prior to trial.

3. The Agreement By Lounsbury's Own Admission Violates Public Policy

Contrary to Lounsbury's argument the Court has never ruled on the Camby's argument that this agreement violated public policy. Indeed, co-defendant Proserv, in its motion for summary judgment argued that Lounsbury's conduct under Connecticut law was illegal. The court was not persuaded by this theory since the conduct at issue occurred in Massachusetts[3]. However, no judge has yet determined whether (1) the conduct was unethical; (2) the conduct violated the NCAA bylaws; or (3) the conduct was unfair, deceptive and unscrupulous as determined by the Connecticut Department of Consumer Protection. Indeed, Lounsbury, in his deposition, admitted that all of the aforementioned were true as it pertained to his conduct. Conn Gen. State. §20-555 prohibiting such

---

[3] The plaintiff in his complaint alleges that the conduct occurred in Massachusetts and Connecticut.

agreements between agents and student athletes was enacted in 1995 – prior to Camby's graduation.

The plaintiff, in his brief conveniently ignores his repeated admissions that his conduct was unethical and in violation of the NCAA bylaws. Attorney Allentuch further fails to respond to the Connecticut Department of Consumer Protection's investigation of Lounsbury for identical conduct and its finding that this very conduct was unfair, deceptive and a violation of CUTPA. As such, the court should not enforce this agreement.

## CONCLUSION

The arguments in the plaintiff's objection are entirely without merit. First, Camby did not breach the accord and satisfaction. Second, the plaintiff and defendant have always maintained that his claim against Camby sounded in promissory estoppel. It is entirely disingenuous to now switch his theory of liability to avoid summary judgment. Third, by Lounsbury's own admission his conduct was unethical, a violation of the NCAA bylaws, and a violation of CUTPA. Accordingly said agreement is unenforceable pursuant to Conn. Gen. Stat. §20-555 – a statute which existed in 1995. Accordingly, defendant's Motion for Summary Judgment should be granted.

THE DEFENDANT,
MARCUS CAMBY

By: _____
Patrick M. Noonan
Brock T. Dubin
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

11

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

John Williams, Esq.
Williams, Polan & Pattis
51 Elm Street
New Haven, CT 06510

Eric D. Daniels, Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

Neubert, Pepe & Monteith
195 Church Street
New Haven, CT 06510

_____
Brock T. Dubin

SUPERIOR COURT, JUDICIAL DISTRICT OF WATERBURY

AT WATERBURY

- - - - - - - - - - - - - - - - - - -X
JOHN LOUNSBURY,                      :
            PLAINTIFF,               :
      VS.                            : CV 99 0150580 S
MARCUS CAMBY, ET AL,                 :
            DEFENDANTS.              :
- - - - - - - - - - - - - - - - - - -X

VOLUME III    COPY

CONTINUED DEPOSITION OF JOHN LOUNSBURY, taken at the law offices of Donahue, Durham & Noonan, 741 Boston Post Road, Guilford, Connecticut, before Jennifer Tramontano, a Licensed Shorthand Reporter and Notary Public, in and for the State of Connecticut, on Friday, September 10, 2004, at 9:08 a.m.

DEL VECCHIO REPORTING SERVICES, L.L.C.
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CONNECTICUT 06443
(203) 245-9583      (800) 839-6867
FAX (203) 245-2760

HARTFORD                              STAMFORD

```
 1       Q    I'm going to refer you to the sixth
 2  paragraph.  I would like you to read the sixth
 3  paragraph, for the record, for me.
 4            MR. ALLENTUCH:  Where it says, "All
 5       monies...."?
 6            MR. DUBIN:  Yes.
 7            THE WITNESS:  "All monies paid to you on
 8       this date will be for full and final...." I
 9       don't know what that word is.
10  BY MR. DUBIN:
11       Q    Can we agree that it's "Satisfaction" or it
12  appears to be "Satisfaction"?
13       A    I can't agree.  I mean, I can't agree to
14  that.  "...of any causes of action, debts, or other
15  claims you or others acting...." I think, it's "Behalf."
16       Q    "Might have."
17       A    If that's the word "...have against me or any
18  of my family now or in the future, and my execution of
19  this..." the word is --
20       Q    "Agreement."
21       A    Well, it doesn't say "Agreement."  It doesn't
22  say anything here "...they are forever discharged."
23       Q    What is your understanding of what that
24  paragraph means?
25       A    Well, considering there's a lot of words
```

1  missing, I really don't have an understanding right now.

2      Q    Did you read the agreement before you cashed
3  the check?

4           MR. ALLENTUCH:  Objection.  That's been
5      asked four times.

6  BY MR. DUBIN:

7      Q    Did you read the agreement before you cashed
8  the check?

9      A    I don't recall.

10     Q    Okay.  You signed the agreement?

11     A    Yes.

12     Q    Did you read the agreement before you signed
13 it?

14     A    I don't recall.

15          MR. ALLENTUCH:  Objection.

16          MR. DUBIN:  I didn't ask him if he read
17     it before he signed it.

18 BY MR. DUBIN:

19     Q    Is this the best copy of the agreement you
20 have?

21          MR. ALLENTUCH:  Objection.  You already
22     asked that question twice.

23 BY MR. DUBIN:

24     Q    Is this the best copy of the agreement you
25 have?

```
1     A      I believe it is.

2     Q      Do you have a copy of the signed agreement?

3            MR. ALLENTUCH: Objection. You know, I

4     am going to direct him not to answer. You've

5     asked him that question. This is the third

6     day of deposition.

7            MR. DUBIN: Thank you.

8            MR. ALLENTUCH: It's beyond the scope

9     of --

10           MR. DUBIN: It's not beyond the scope.

11  BY MR. DUBIN:

12    Q      Do you have a copy of the agreement that

13  Marcus Camby signed?

14    A      I'm going to defer to my counsel.

15    Q      You can't defer to your counsel.

16    A      What do you mean I can't?

17    Q      Do you have a copy of the agreement that

18  Marcus Camby signed?

19           MR. ALLENTUCH: You can answer the

20    question.

21           THE WITNESS: No. I think I stated to

22    the best of my knowledge, Marcus never signed

23    one.

24  BY MR. DUBIN:

25    Q      You had indicated in prior testimony that it
```

1      A    I believe it is.

2      Q    Do you have a copy of the signed agreement?

3           MR. ALLENTUCH:  Objection.  You know, I
4      am going to direct him not to answer.  You've
5      asked him that question.  This is the third
6      day of deposition.

7           MR. DUBIN:  Thank you.

8           MR. ALLENTUCH:  It's beyond the scope
9      of --

10          MR. DUBIN:  It's not beyond the scope.

11 BY MR. DUBIN:

12     Q    Do you have a copy of the agreement that
13 Marcus Camby signed?

14     A    I'm going to defer to my counsel.

15     Q    You can't defer to your counsel.

16     A    What do you mean I can't?

17     Q    Do you have a copy of the agreement that
18 Marcus Camby signed?

19          MR. ALLENTUCH:  You can answer the
20     question.

21          THE WITNESS:  No.  I think I stated to
22     the best of my knowledge, Marcus never signed
23     one.

24 BY MR. DUBIN:

25     Q    You had indicated in prior testimony that it